UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| RACHEL SALPETER-LEVY, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | :    Case No. |
| CYPRESS SEMICONDUCTOR CORP., DR. | : |
| W. STEVE ALBRECHT, HASSANE EL- | : |
| KHOURY, OH CHUL KWON, CATHERINE | : |
| P. LEGO, CAMILLO MARTINO, JOHN D. | : |
| MCCRANIE, JEFFREY J. OWENS, | : |
| JEANNINE P. SARGENT, and MICHAEL S. | : |
| WISHART, | : |
| | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Rachel Salpeter-Levy ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Cypress Semiconductor Corporation ("Cypress" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Cypress, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger of Cypress with Infineon Technologies AG ("Infineon") and IFX Merger Sub Inc., a wholly-owned subsidiary of Infineon ("Merger Sub").

2.      On June 2, 2019, Cypress entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Company's shareholders will receive $23.85 in cash for each share of Cypress stock they own (the "Merger Consideration").

3.      On July 2, 2019, in order to convince Cypress's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Cypress; (ii) the valuation analyses performed by Cypress's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its fairness opinion; (iii) details about fees and other aspects of J.P. Morgan's involvement in the Proposed Transaction and (iv) whether there exist any confidentiality agreements which contain Standstill and/or "Don't Ask, Don't Waive" ("DADW") provisions.

5.      The Proposed Transaction is expected to close in early 2020 and Defendants' issuance of the Proxy is the first step stop towards a shareholder vote.  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to special meeting of Cypress's shareholders to vote on the Proposed Transaction so Plaintiff can properly exercise her corporate voting rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cypress's public common shareholders sufficiently in advance of the special meeting of Cypress's

shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with the District of Southern New York as to render the exercise of jurisdiction over the Defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state*.*" *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Cypress's common stock trades on NASDAQ, which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.      Plaintiff is, and at all relevant times has been, a holder of Cypress common stock.

11.      Defendant Cypress Semiconductor Corporation ("Cypress" or the "Company") is

incorporated in Delaware and maintains its principal executive offices at 198 Champion Court, San Jose, CA 95134. The Company's common stock trades on the NASDAQ under the ticker symbol "CY"

12.     Defendant Dr. W. Steve Albrecht is, and has been at all relevant times, a director of Cypress. Defendant Albrecht also currently serves as the Chairman of the Board of Directors for Cypress.

13.     Defendant Hassane Al-Khoury is, and has been at all relevant times, a director of Cypress. Defendant Al-Khoury also currently serves as the President and Chief Executive Officer of Cypress

14.     Defendant Oh Chul Kwon is, and has been at all relevant times, a director of Cypress.

15.     Defendant Catherine P. Lego is, and has been at all relevant times, a director of Cypress.

16.     Defendant  Camillo Martino is, and has been at all relevant times,  a director  of Cypress.

17.     Defendant John D. McCranie is, and has been at all relevant times, a director of Cypress.

18.     Defendant Jeffery J. Owens is, and has been at all relevant times, a director of Cypress.

19.     Defendant Jeannine P. Sargent is, and has been at all relevant times, a director of Cypress.

20.      Defendant Michael S. Wishart is, and has been at all relevant times, a director of Cypress.

21.     The Individual Defendants referred to in paragraphs 12-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board", together with Cypress they are referred to herein as the "Defendants."

4

## SUBSTANTIVE ALLEGATIONS

**I.      The Proposed Transaction**

22.     Cypress is a designer and manufacturer of advanced electronics geared towards the IT industry. Its products include flash memories, microcontrollers, system-on-chip solutions, capacitive touch-sensing controller, and various other products.

23.     On June 2, 2019, the Board caused the Company to enter into the Merger Agreement. Pursuant to the terms of the Merger Agreement, Cypress's shareholders will only receive $23.85 per share in cash for each unit of Cypress common stock they hold.

24.     On that same day, Cypress issued a press release announcing the Proposed Transaction, which states in pertinent part:

> Munich, Germany, and San Jose, California – 3 and 2 June 2019 – Infineon Technologies AG (FSE: IFX / OTCQX: IFNNY) and Cypress Semiconductor Corporation (NASDAQ: CY) today announced that the companies have signed a definitive agreement under which Infineon will acquire Cypress for US$23.85 per share in cash, corresponding to an enterprise value of €9.0 billion.
>
> Reinhard Ploss, CEO of Infineon, said: "The planned acquisition of Cypress is a landmark step in Infineon's strategic development. We will strengthen and accelerate our profitable growth and put our business on a broader basis. With this transaction, we will be able to offer our customers the most comprehensive portfolio for linking the real with the digital world. This will open up additional growth potential in the automotive, industrial and Internet of Things sectors. This transaction also makes our business model even more resilient. We look forward to welcoming our new colleagues from Cypress to Infineon. Together, we will continue our shared commitments to innovation and focused R&D investments to accelerate technology advancements."
>
> Hassane El-Khoury, President and CEO of Cypress, said: "The Cypress team is excited to join forces with Infineon to capitalize on the multi-billion dollar opportunities from the massive rise in connectivity and computing requirements of the next technology waves. This announcement is not only a testament to the strength of our team in delivering industry-leading solutions worldwide, but also to what can be realized from uniting our two great companies. Jointly, we will enable more secure, seamless connections, and provide more complete hardware and software sets to strengthen our customers' products and technologies in their end markets. In addition, the strong fit of our two companies will bring enhanced opportunities for our customers and employees."

Steve Albrecht, Chairman of the Board of Directors of Cypress, said: "For the past three years, our Cypress 3.0 strategy has delivered tremendous results and restructured the entire organization to focus on markets that matter. After receiving interest from several companies, we entered into a transaction that is a testament to our team's strategy and hard work. For Cypress shareholders, the combination of continued dividends through closing plus the US$23.85 cash price represents significant value creation. This transaction will create product opportunities that are increasingly important in the competitive automotive, industrial, and consumer markets. As Board members, we are grateful for Cypress's outstanding management team, led by Hassane El-Khoury."

With the addition of Cypress, Infineon will consequently strengthen its focus on structural growth drivers and serve a broader range of applications. This will accelerate the company's path of profitable growth of recent years. Cypress has a differentiated portfolio of microcontrollers as well as software and connectivity components that are highly complementary to Infineon's leading power semiconductors, sensors and security solutions. Combining these technology assets will enable comprehensive advanced solutions for high-growth applications such as electric drives, battery-powered devices and power supplies. The combination of Infineon's security expertise and Cypress's connectivity know-how will accelerate entry into new IoT applications in the industrial and consumer segments. In automotive semiconductors, the expanded portfolio of microcontrollers and NOR flash memories will offer great potential, especially in light of their growing importance for advanced driver assistance systems and new electronic architectures in vehicles.

With the addition of Cypress's strong R&D and geographical presence in the U.S, Infineon not only strengthens its capabilities for its major customers in North America, but also in other important geographical regions. The company adds to its R&D presence in Silicon Valley and gains presence, as well as market share, in the strategically important Japanese market. At the same time, Infineon aims to achieve significant economies of scale, making Infineon's business model even more resilient. Based on pro forma revenues of €10 billion in FY 2018, the transaction will make Infineon the number eight chip manufacturer in the world. In addition to its already leading position in power semiconductors and security controllers, Infineon will now also become the number one supplier of chips to the automotive market.

The acquisition will also improve Infineon's financial strength and Infineon shareholders are expected to benefit from earnings accretion beginning in the first full fiscal year after closing. The capital intensity will decrease, resulting in an increasing free cash flow margin. Infineon has validated sales and cost synergies assumptions as part of due diligence. Expected economies of scale will create cost synergies of €180 million per annum by 2022. The complementary portfolios will enable the offering of further chip solutions with a revenue synergies potential of more than €1.5 billion per annum in the long term.

Upon successful integration, Infineon will adapt its target operating model

accordingly. Then, the company targets through-cycle revenue growth of 9+ percent and a segment result margin of 19 percent. The investment-to-sales ratio is targeted to decrease to 13 percent.

Under the terms of the agreement, Infineon will offer US$23.85 in cash for all outstanding shares of Cypress. This corresponds to a fully diluted enterprise value for Cypress of €9.0 billion. The offer price represents a 46 percent premium to Cypress's unaffected 30-day volume-weighted average price during the period from 15 April to 28 May 2019, the last trading day prior to media reports regarding a potential sale of Cypress.

Cypress expects to continue its quarterly cash dividend payments until the transaction closes. This includes Cypress's previously announced quarterly cash dividend of US$0.11 per share, payable on July 18, 2019 to holders of record of Cypress's common stock at the close of business on June 27, 2019.

The funding of the acquisition is fully underwritten by a consortium of banks. Infineon is committed to retaining a solid investment grade rating and, consequently, Infineon intends to ultimately finance approximately 30 percent of the total transaction value with equity and the remainder with debt as well as cash on hand. The financial policy to preserve a strategic cash reserve remains in place.

The acquisition is subject to approval by Cypress's shareholders and the relevant regulatory bodies as well as other customary conditions. The closing is expected by the end of calendar year 2019 or early 2020.

Credit Suisse and J.P. Morgan acted as lead financial advisors to Infineon. Bank of America Merrill Lynch also acted as financial advisor. All three banks acted as structuring banks in addition to providing committed financing for the transaction, Bank of America Merrill Lynch in the lead. Kirkland & Ellis LLP and Freshfields Bruckhaus Deringer LLP are acting as legal advisors to Infineon. Morgan Stanley is acting as exclusive financial advisor to Cypress, and Simpson Thacher & Bartlett LLP is serving as legal counsel.

## II.     The Proxy Omits Material Information

25.     On July 2, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

26.     First, Cypress's projections in the Proxy at 71-74, are incomplete and misleading as they fail to disclose (i) all line-items used in the calculation of Adjusted EBITDA; (ii) all line-items used in the calculation of Unlevered Cash Free Cash Flow or ("UFCF"), and (iii) a complete reconciliation of non-GAAP numbers to GAAP.

27.     Numerous courts have championed the importance of management based financial projections because a company's management has unique insight into their firm's future that the market does not.  Shareholders cannot hope to replicate management's inside view of the Company's prospects.  The established case law shows the importance (and, hence, materiality) of financial projections and its inputs to shareholders' decision-making.

28.     Second, the Proxy Statement omits crucial information regarding the valuation analyses carried out by J.P. Morgan. The omitted information, if disclosed would significantly alter the total mix of information available to Cypress's common stockholders.

29.     With respect to J.P. Morgan' *Discounted Cash Flow Analysis*, the Proxy is materially misleading and incomplete because it fails to disclose: (i) the basis for its decision  to apply a perpetual growth rate of 2% to 3% in its calculation of the terminal values ; and (ii) the inputs and assumptions underlying the selection of a discount rate range  of 9.4% to 11.1%.

30.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . . " *Id*. (footnote omitted). As Professor Davidoff explains:

There is substantial leeway to determine each of these, and any change can

> markedly affect the discounted cash flow value . . . The substantial discretion and
> lack of guidelines and standards also makes the process vulnerable to manipulation
> to arrive at the "right" answer for fairness.  This raises a further dilemma in light of
> the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

31.     This lack of disclosure regarding the discount rate and terminal values renders J.P.

Morgan's analysis flawed and possibly misleading.

32.     Third, the Proxy Statement omits materials information regarding the engagement

of the Company's financial advisor, J.P. Morgan in regards to the Proposed Transaction. The fee

J.P. Morgan will be receiving for its work on the Proposed Transaction is not disclosed. Likewise,

it is not disclosed whether J.P. Morgan has received compensation from either the Company or from

Infineon for work done the past, and if so, how much.

33.     Fourth, the Proxy Statement does not disclose whether the Company entered into

any confidentiality agreements containing Standstill and/or "Don't Ask, Don't Waive" or "DADW"

provisions.  Shareholders must be made aware of whether counterparties were prevented from

making a superior offer in order to make an informed vote.

34.     Defendants' failure to provide the foregoing material information renders the

statements in the Proxy false and/or materially misleading.

35.     In sum, the omission of the above-referenced information renders the Proxy

materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of

the foregoing material information prior to the upcoming special meeting of Cypress shareholders,

Plaintiff will be unable to make an informed decision regarding whether to vote her shares in favor

of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the

injunctive relief sought herein.

**COUNT I**
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

40.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for Cypress; (ii) the valuation analyses performed by Cypress's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its fairness opinion; (iii) details about fees and other aspects of J.P. Morgan's involvement in the Proposed Transaction and (iv) whether there exist any confidentiality agreements which contain

Standstill and/or "Don't Ask, Don't Waive" ("DADW") provisions.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

42.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that J.P. Morgan  reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by J.P. Morgan, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review J.P. Morgan's analyses in connection with their receipt of the fairness opinions, question J.P. Morgan as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

44.     Cypress is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

45.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of Cypress's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Cypress within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Cypress, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination

of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Cypress shareholders to vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 10, 2019

**MONTEVERDE & ASSOCIATES PC**

  */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*